GULOTTA, Judge.
Mrs. Zelia Acosta sustained back injury in an accident when a truck backed into an automobile occupied by her. We are confronted solely with a quantum question. The trial judge awarded $2,021.64 in special damages and $14,738.36 in general damages. Defendant’s appeal is directed toward the excessiveness of the general damage award.
One of the considerations, among others, of the trial judge, in making the award, was stated in written reasons as follows:
“ * * * In this case the problems confronting a person of advanced age are easily shown due to the fact that the Plaintiff had X-rays taken one month prior to the accident during a routine physical and these X-rays reflected normal findings. Those X-rays taken following the accident showed degenerative changes which were attributed to trauma. * * * ”
Defendant claims the trial judge, in reaching his conclusion, misinterpreted the medical evidence. According to defendant, depositions of plaintiff’s treating physicians do not support the conclusion that degenerative changes were attributed to trauma. We agree.
Dr. Robert A. Robinson, who examined the 67-year-old (at time of trial) plaintiff initially on April 15, 1974, the date of the accident, and continued treatment up to two weeks prior to the trial date on September 23, 1975, stated that his examination of two x-rays — one taken on March 23, 1974, prior to the accident and another taken on August 25, 1975, post-accident— shows arthritic changes that were about the same. The 1974 radiology report indicates “. . there are minor hypertrophic changes in thoracic spine”. And the 1975 post-accident radiology report states: “Mild degenerative changes are present in dorsal spine.”
According to Dr. E. J. Dabezies, who examined plaintiff on February 6, 1975, the effect of the injury had been resolved. Dr. Dabezies further indicated. “There was no evidence of a significant underlying orthopedic disorder. The osteoarthritis of the lumbar spine was considered to be pre-ex-isting and to be unrelated to the injury.”
The remaining physician who testified was Dr. Raoul Guevara. Plaintiff received a course of treatment from his physician along with the treatment administered to her by Dr. Robinson. No mention was made in Dr. Guevara’s testimony which supports the determination of the trial judge that degenerative changes were attributed to trauma.
*1243 Under the circumstances, we are compelled to conclude that any award which includes damages for degenerative changes in the spine is necessarily excessive and must be reduced accordingly.[1] We now consider the injuries sustained by Mrs. Acosta as reflected in the medical evidence.
Mrs. Acosta was seen by Dr. Robinson on April 15, 1974, the date of the accident. His diagnosis revealed traumatic fibrositis of the ligaments about the twelfth thoracic (chest vertebra), fourth lumbar, lumbo-sacral and both sacroiliac joints. According to the doctor, he had known plaintiff professionally for a period of approximately 20 years, and during the course of treatment in that period of time, plaintiff had not experienced any back problems. The treatment prescribed by Dr. Robinson for the museular-ligamentous-type injury involved injections on 45 different occasions from April 15, 1974 to July 14, 1975. Dr. Robinson stated that in the weekly or bi-weekly intervals of the visits to his office, injections of Novocain and cortisone were introduced into the sites of the back where tenderness was exhibited. According to the doctor, on some occasions, five injections were administered and as many as eight injections were given at a time on some occasions. Dr. Robinson further testified that during the approximate 15-month period of treatment, plaintiff suffered intermittent pain. He further indicated that some future medical care can reasonably be anticipated. Dr. Robinson added that at the time of the taking of his deposition, October 6, 1975, there existed some residual pain.
Dr. Raoul Guevara administered injections to Mrs. Acosta on five occasions. According to this physician, injection of a cortisone and local anesthetic is an accepted method of treating muscular-ligamentous-type injury of the back. Dr. Guevara added that he had seen plaintiff initially on April 16, 1974, and that she was experiencing muscle spasm at that time.
In a deposition, Dr. Dabezies disagreed with the course of treatment administered by Drs. Robinson and Guevara. According to Dr. Dabezies, he would not prescribe a course of treatment for chronic back syndrome which would involve frequent multiple injections of cortisone. This physician’s regimen of treatment would involve injections at intervals of not less than eight weeks apart. Based on Dr. Dabezies’s testimony, defendant contends that the treatment administered to plaintiff was excessive and that defendant should not be held responsible for the payment of this expensive overtreatment. We find no merit to this contention. In Hillebrandt v. Holsum Bakeries, Inc., 267 So.2d 608 (La.App. 4th Cir. 1972), we stated that no reduction will be allowed based on claimed excessive treatment.
Considering no showing was made that degenerative changes in the spine resulted from the accident, we deem that a $5,000.00 reduction in the amount of the general damage award is reasonable.
Accordingly, the judgment of the trial court awarding general damages to plaintiff in the sum of $14,738.36 is amended and reduced to the sum of $9,738.36. In all other respects, the judgment is affirmed. As amended, affirmed.

AMENDED AND AFFIRMED.

. We do not perceive this matter as a violation of the “much discretion” rule. Accordingly, the guidelines set forth in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.S.Ct.1976), are not applicable.